UNITED STATES of America, Plaintiff-Appellee,

v.

Joan Anne KERRIGAN, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Alvin Gerson LEVITT, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Barry BERK, Defendant-Appellant.

Nos. 74–2696, 74–2092 and 75–2695.

United States Court of Appeals, Ninth Circuit.

March 10, 1975.

Arthur Lewis, Los Angeles, Cal., Michael D. Nasatir, Beverly Hills, Cal., for defendants-appellants.

William D. Keller, U. S. Atty. and Stuart Rudnix, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

OPINION

Before KOELSCH and GOODWIN, Circuit Judges, and RENFREW,* District Judge.

PER CURIAM.

Appellants Kerrigan, Levitt and Berk appeal from their convictions in the Central District of California for conducting an illegal gambling business in violation of 18 U.S.C. § 1955. The case was submitted to the court upon a stipulation of facts. We affirm the judgments below.

* The Honorable Charles B. Renfrew, United States District Judge, Northern District of California, sitting by designation.

1. A discussion of the other six issues follows:

1. Appellants contend that § 1955 cannot constitutionally be applied to them, because the government stipulated that investigation had disclosed no contacts with organized crime, interstate gamblers or police corruption. Our decision in United States v. Sacco, 491 F.2d 995 (9th Cir. 1974), disposed of this contention. "If the class of activities is within the reach of the federal power and the regulation imposed is reasonable, a court's investigation is concluded. There is no need for inquiring on a case-by-case basis or proof that a particular activity had an effect on commerce. [citations omitted]" 491 F.2d at 999. This holding that § 1955 is a valid exercise of Congressional power under the Interstate Commerce Clause disposes of appellants' Tenth Amendment objections that the statute impermissibly invades the reserved powers of the states.

2. Appellants claim that the classification of § 1955 violations as felonies violates equal protection since the very same conduct might only result in a misdemeanor conviction in state court. (See Cal.Penal Code § 337a.) Congress' power to proscribe conduct carries with it the power to impose appropriate penalties without attempting to match them to varying state punishments for similar conduct. Hence, the potentially different treatment of § 1955 violators as compared to California Penal Code § 337a violators raises no cognizable equal protection infringement nor does it invade any power reserved under the Tenth Amendment to the state to prosecute violations of penal laws within its borders.

3. Appellant Kerrigan's assertion that her prior state conviction was for the exact same conduct as the federal indictment is not clear from the stipulated facts. Her further contention that the double jeopardy clause makes it a bar to the federal prosecution is completely contrary to law. Abbate v. United States, 359 U.S. 187, 195, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); see Bartkus v. Illinois, 359 U.S. 121, 136–158, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959).

4. Appellant Berk asserts that the evidence was insufficient to prove that he "conducted" an illegal gambling business. The evidence of his activity in settling bets and in disseminating a phone number and code name for placing bets was substantial; thus, the lower court properly concluded that the test of Sacco, supra, 491 F.2d at 1002–1003, had been met.

5. Appellants' convictions were based in large part on evidence gained through two court-ordered wiretaps. Appellants' claim of privilege for the wiretapped conversations is based upon a wholly unsupportable construction of both California Penal Code § 631 and 18 U.S.C. § 2517(4). We find no basis for believing that California attempted to prohibit the use of federally authorized wiretaps in federal prosecutions, or that Congress intended to sanction such a prohibition by the preservation of privilege set forth at § 2517(4).

6. Appellants claim that the United States Attorneys making the wiretap applications failed to use independent judgment in determining the need for the interceptions, as required by United States v. Giordano, 416 U.S. 505, 515, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). The application disclosed that the United States Attorneys fulfilled their obligations by engaging in extensive discussions with special FBI agents assigned to the case as well as officials of the Organized Crime and Racketeering Section, Criminal Division, Department of Justice, prior to making the wiretap application.

2. The issue of whether the Attorney General's automatic signature upon recommendation of a Deputy Assistant Attorney General constitutes compliance with the further requisites of Giordano was alluded to in appellants' reply brief. However, since it was neither raised in appellants' initial brief nor urged at oral argument, we do not consider it one of the issues presented on appeal.

---

Appellants raise seven issues on appeal, of which only one has merit.[1] 18 U.S.C. § 2518(1)(c) requires a wiretap applicant to include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried * * *." 18 U.S.C. § 2518(3)(c) further requires the court to find that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried * * *." Appellants contend that the government showing was deficient on this point.[2]

An affidavit by Special Agent Larry Montague was filed in support of the wiretap application. It summarized the evidence produced by the following investigative techniques: physical surveillance of the suspects, inspection of phone company records and police records, a previous wiretap, and the use of informants. Special Agent Montague declared that all informants had stated they would refuse to testify even if granted immunity and he determined that the remaining evidence would not suffice to support a conviction. The affidavit concludes with Montague's reasons for believing that other investigative procedures would be unlikely to produce usable evidence, specifically the general unwillingness of bookmaking customers to testify and the proclivity of bookmakers to keep unintelligible records, if any, and to destroy them in case of search.

■ We agree with appellants that the boilerplate recitation of the difficulties of gathering usable evidence in bookmaking prosecutions is not a sufficient basis for granting a wiretap order. To hold otherwise would make § 2518(1)(c) and (3)(c) mere formalities in bookmaking cases. However, in this case, agents had engaged in investigation for over three months, including physical surveillance of the suspects, had reasonably established that their informants would not testify, and had reason to believe that the other evidence thus far produced would not support a conviction. Further, physical surveillance of the residence identified by informants as housing the four "front office" telephones disclosed that it was fronted by a 5-foot high chain link fence topped by 3-stranded barb wire and had two large dogs patrolling the area between house and fence. Thus the government demonstrated a factual basis for its concern that the suspects might have time and inclination to destroy evidence in case of search.

■ While this Court gives little weight to conclusionary statements about the likely outcome of future investigations, we also recognize that the law does not require that a wiretap be used only as a last resort. On balance we find that the affidavit submitted in this case, while marginal, does suffice to meet the requirements of § 2518(1)(c).

For the foregoing reasons, the judgments are affirmed.