**UNITED STATES of America ex rel.
Andrew Joseph MACHI,
Petitioner,**

**v.**

**UNITED STATES DEPARTMENT OF
PROBATION AND PAROLE,
Respondent.**

No. 75–C–33.

United States District Court,
E. D. Wisconsin.

Sept. 12, 1975.

See D. C., 395 F.Supp. 58.

Joseph P. Balistrieri, Milwaukee, Wis., for petitioner.

William J. Mulligan, U. S. Atty., Milwaukee, Wis., for respondent.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This is the petitioner's motion, pursuant to 28 U.S.C. § 2255, to set aside his conviction and sentence for the offenses contained in counts 2 through 6 and in count 8 of the indictment in case number 70–Cr–167. The sole and determinative issue to be resolved is whether Mr. John Mitchell, the former attorney general, had sufficient information before him to exercise his power under 18 U.S. C. § 2516(1) to authorize the application for the September 8, 1970, wiretap order which was issued by Judge John W. Reynolds. I find that Mr. Mitchell's authorization did not comply with the requirements of § 2516(1). Therefore, the petitioner's § 2255 motion must be granted.

It is undisputed that if anyone exercised the power under 18 U.S.C. § 2516(1) to authorize an application for the September 8, 1970, wiretap order, it was former attorney general, Mr. John Mitchell. According to the affidavit of Sol Lindenbaum, Mr. Mitchell's executive assistant, Mr. Mitchell was out of town, and Mr. Lindenbaum telephonically presented to Mr. Mitchell the criminal division's request for authority to seek a wiretap order. According to Mr. Lindenbaum's affidavit, Mr. Mitchell was advised by him "of the *substance* of a memorandum of recommendation" in addition to "a proposed memorandum of approval." (Emphasis added).

The "memorandum of approval" is a short document containing no information pertinent to a determination of the necessity for a wiretap aside from a listing of the telephone numbers, the statutory violations and the persons to be tapped. The "memorandum of recommendation" was described by the government's counsel at the hearing on September 2, 1975, as containing a "summary" of the facts supporting probable cause which are contained in the investigating officer's affidavit. This latter

affidavit is the one from which a judge can ordinarily determine whether probable cause for the wiretap order exists.

It is thus apparent that Mr. Mitchell's view of the information supporting probable cause for the wiretap was refined and distilled first by the criminal division and a second time when Mr. Lindenbaum related the "substance" of the document which, in turn, contained a "summary" of the facts supporting probable cause.

I believe that § 2516(1) required Mr. Mitchell to have before him more basic information and unscreened data in order for him to make an independent judgment concerning the wisdom of seeking a wiretap order than was possible considering the procedures utilized in this case.

■ The cases cited by both counsel contain commentary bearing on the purpose and functions of § 2516(1) which indicates uniformity that the attorney general's decision whether to seek a wiretap order must be an informed decision. See, e. g., *United States v. Falcone*, 505 F.2d 478, 481 (3d Cir. 1974), cert. denied, 420 U.S. 955, 95 S.Ct. 1339, 43 L.Ed.2d 432 (1975) (the attorney general was "fully aware of the facts of the specific case"); *United States v. Whitaker*, 343 F.Supp. 358, 360 (E.D. Pa.1972), rev'd on other grounds, 474 F.2d 1246 (3d Cir.), cert. denied, 412 U.S. 950, 953, 93 S.Ct. 3003, 37 L.Ed.2d 1006 (1973) ("There certainly was enough information before the Attorney General for him personally to authorize the application.").

The requirements of § 2516(1) were also considered in *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L. Ed.2d 341 (1972); in language germane to the issue in the case at bar, the Court said at pages 515–16, 94 S.Ct. at page 1827:

"The *mature judgment* of a particular, responsible Department of Justice official is interposed as a critical precondition to any judicial order." (Emphasis added).

■ The plain implication of the aforementioned decisions is that unless the attorney general has enough detailed information before him from which to exercise his judgment, a decision to seek a wiretap order does not stem *from* him, as required by the statute, but rather stems from subordinates who have recommended it.

■ In my view, it is evident that Mr. Mitchell's authorization to seek the September 8, 1970, wiretap order was little more than a rubber stamp, and an oral one to boot. The procedures employed in this case for imparting the critical information—that pertaining to probable cause—allowed Mr. Mitchell to receive such information only after it had been condensed twice. Thus, Mr. Mitchell's view of the facts bearing on probable cause for the wiretap were inevitably tailored to the point where his ability to decide meaningfully whether to seek a wiretap authorization had been effectively abridged.

■ Accordingly, I hold that the authorization procedure utilized in this case did not reflect the judgment of the attorney general and therefore did not comply with the requirements of 18 U. S.C. § 2516(1). It follows that the admission into evidence at the movant's trial in case number 70–CR–167 of material which was obtained as a result of the September 8, 1970, wiretap was unlawful, and such evidence should have been suppressed. *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L. Ed.2d 341 (1972). I have previously determined, in an order dated August 11, 1975, that such suppression application may be entertained at this late date.

Therefore, it is ordered that the petitioner's convictions and sentences for the crimes charged in counts 2 through 6 and count 8 of the indictment in 70–CR–167, be and hereby are vacated.

It is also ordered that the petitioner be and hereby is discharged from further obligations in connection with the sentence imposed in 70–CR–167.