IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 91-4994

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES THOMAS DOUCETTE, III,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

(December 9, 1992)

Before REAVLEY, HIGGINBOTHAM, and DUHÉ, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

James Thomas Doucette, III, appeals his conviction and sentence for possession of a firearm by a convicted felon. He argues that the government failed to comply with Fed. R. Crim. P. 16, that his allegedly involuntary confessions were erroneously admitted, and that the district court made an improper upward departure in sentencing him to twenty-five years imprisonment. We reject these contentions and affirm.

I.

On June 13, 1990, defendant James Thomas Doucette and Robert Wilkey robbed the home of a Victoria, Texas family. Doucette and Wilkey, who carried a .38 caliber handgun and a sawed-off shotgun, removed two guns, money, and jewelry from the home. They then drove to the home of Larry Craig in Liberty, Texas, where Wanda Faye, Doucette's wife, was staying at the time. Wanda Faye and Craig came out of house to speak to Doucette and Wilkey, who remained in the car. Once Craig noticed the guns, however, he grew suspicious and told his mother to call the police. When

Craig warned that the police were on the way, Doucette and Wilkey immediately drove off. The police intercepted them and were able to arrest Wilkey and recover two guns that had been thrown from the car. Doucette, however, escaped.

Doucette was apprehended approximately one month later in Lumberton, Texas. On July 10, Lumberton Police Officer Odom observed a Corvette being driven in a reckless, erratic manner along the highway. When Officer Odom stopped the car, the driver, Doucette, attempted to evade him by crossing the highway median. The car, however, was struck by oncoming traffic and sent careening into a ditch. Doucette then fled on foot. The police found a loaded .38 caliber handgun with an altered serial number in the abandoned car; Doucette was discovered in the woods near the crash the next morning. Officer Odom recognized Doucette as the driver of Corvette and placed him under arrest. After he had received the Miranda warnings, Doucette admitted that he had fled the day before. Doucette gave a more detailed written statement at the police station in which he confirmed that he was the driver of the Corvette and admitted that he had been in possession of the handgun found in the car.

Doucette was first tried and convicted of auto theft and aggravated robbery in Texas state court. He was sentenced to 99 years imprisonment. Doucette was then transported to the United States District Court for the Eastern District of Texas for trial on five counts of illegal firearms possession. A jury found Doucette guilty on all five counts and the district court sentenced him to twenty-five years imprisonment.

## II.

Doucette appeals his conviction and sentence. He urges that the government's failure to comply with Fed. R. Crim. P. 16 and the district court's erroneous admission of his allegedly involuntary confessions entitle him to a new trial. Doucette also contends that the district court made an improper upward departure in sentencing him to twenty-five years imprisonment. We find these objections meritless and affirm.

## A.

Doucette argues that the government violated Fed. R. Crim. P. 16 in failing to disclose certain evidence before trial.  In particular, he complains that the government withheld the substance of his oral confession, a fingerprint card, penitentiary packets listing his prior convictions, and reports from the Bureau of Alcohol, Tobacco and Firearms confirming that the guns found in his possession were unregistered.  Since the district court declined to exclude any of this evidence, Doucette maintains that his conviction must be reversed.  We review alleged discovery errors for abuse of discretion and will order a new trial only where a defendant demonstrates prejudice to his substantial rights.  United States v. Ellender, 947 F.2d 748, 756 (5th Cir. 1991); United States v. Garcia, 917 F.2d 1370, 1374 (5th Cir. 1990).

We are not convinced that the government withheld any of the evidence in question.  The government has represented that it did not receive the fingerprint card and Bureau of Alcohol, Tobacco and Firearms reports until the day of the trial.  When the government introduced these records at trial, Doucette's counsel was given an opportunity to review the documents and object to their receipt into evidence.  The government was in possession of the oral statement and the penitentiary packets well before trial and the record indicates that defense counsel was invited to the U.S. Attorney's Office to examine this evidence.  Doucette's counsel, however, failed to appear on the scheduled date or anytime thereafter.  Rule 16 requires only that the government permit the defendant to inspect the materials covered by this provision.[1]  For this reason, there can be no

_____

[1]Rule 16(a)(1) provides:

> (A)  Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph . . . the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent.

. . . . . .

> (C)     Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, . . . . which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial. . . .

violation of Rule 16 where, as here, the defendant's lack of diligence is the sole cause of his failure to obtain evidence made available by the government. See United States v. Lambert, 580 F.2d 740, 745 (5th Cir. 1978); see also Ellender, 947 F.2d at 757 ("where the defendant's own lack of reasonable diligence is the sole reason for not obtaining the pertinent material, there can be no Brady claim") (citing United States v. Brown, 628 F.2d 471, 473 (5th Cir. 1980)). The district court did not abuse its discretion in declining to exclude this evidence.

B.

Doucette next contends that the district court erred in refusing to suppress his allegedly involuntary oral and written statements. After he had been arrested and advised of his rights by Officer Odom, Doucette confessed that he was the driver that had fled the day before. Doucette gave a more detailed written statement to Police Chief Reynolds at the police station. This signed statement admitted that he was the driver of the Corvette and that he had possessed of the gun found in the car. After conducting hearings pursuant to 18 U.S.C. § 3501,[2] the district court admitted both statements.

A confession is voluntary if, under the "totality of the circumstances," the statement is the product of the accused's "free and rational choice." United States v. Rogers, 906 F.2d 189, 190 (5th Cir. 1990); Martinez v. Estelle, 612 F.2d 173, 177 (5th Cir. 1980). "This Court must give credence to the credibility choices and findings of fact of the district court unless clearly erroneous." United States v. Raymer, 876 F.2d 383, 386 (5th Cir.), cert. denied, 110 S.Ct. 198 (1989). The ultimate issue of voluntariness, however, is a legal question, subject to de novo review. United States v. Menesses, 962 F.2d 420, 428 (5th Cir. 1992) (citing Raymer, 876 F.2d at 386).

Doucette asserts that his written and oral statements were involuntary because he was denied necessary medical attention until he had confessed. Doucette suffered a serious laceration to his arm when his Corvette plunged into the ditch. Upon Doucette's arrival at the police station, one of Chief

---

[2]Doucette also argues that the district court failed to conduct a hearing to determine whether the oral confession was voluntary before admitting the statement into evidence. The record contradicts this claim.

Reynolds' deputies cleaned and sterilized his wound. Doucette testified during the suppression hearing that he also made repeated requests to be taken to the hospital. According to Doucette, Chief Reynolds conditioned additional medical treatment on his willingness to sign the written confession. Chief Reynolds offered a different version of these events at the suppression hearing. He testified that nothing was promised Doucette in return for his inculpatory statement and that Doucette in fact declined several offers to go to the hospital or to see a doctor. This sharply conflicting testimony left the district court with a credibility choice, which it resolved in favor of the government. We cannot say that the district court's decision to believe the police rather than Doucette was clearly erroneous. Since there is no evidence of coercion beyond Doucette's own discredited testimony, we must affirm the district court's determination that his confession was given voluntarily.

## C.

Doucette finally contends that the district court made an improper upward departure in sentencing him to twenty-five years imprisonment. The jury found Doucette guilty on all five counts alleged in the indictment, including the possession of a firearm by a convicted felon in violation of 18 U.S.C. 922(g). The district court determined that the offense level for the counts of conviction was twenty. Since Doucette's criminal history category was VI, this produced a sentencing range of 70-87 months under the guidelines. The court noted, however, that 18 U.S.C. § 924 (e) mandates a minimum sentence of fifteen years for a defendant with at least three prior convictions for violent felonies found guilty of illegal gun possession under 18 U.S.C. § 922(g). Since this statutorily required minimum sentence exceeded the maximum guideline sentence, Doucette's guideline sentence became fifteen years. U.S.S.G. § 5G1.1(b). We do not understand Doucette to challenge the district court's imposition of an enhanced sentence of fifteen years pursuant to § 924 (e).

Doucette does object to the district court's ten-year upward departure from the guideline sentence of fifteen years. The government sought to enhance Doucette's sentence on the basis of his status as a career offender under § 4B1.1. The presentence report found this provision applicable because (1) Doucette was at least eighteen at the time of the instant offense, (2) the instant offense

5

was a crime of violence, and (3) Doucette had at least two prior convictions for crimes of violence. The application of 4B1.1 would have produced a sentencing range of 360 months to life.

The district court, however, was "not convinced that the defendant used a firearm . . . in committing the offense of robbery." Since the instant offense could not be characterized as a crime of violence, the career offender provision was inapplicable: "[T]he court will not consider the robbery in connection with the sentencing, which will also require the court not to consider the defendant as a career offender." The court instead found that a ten-year increase from the mandatory minimum sentence of fifteen years was appropriate under § 4A1.3, which authorizes upward departures where "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past conduct or the likelihood that the defendant will commit other crimes." The court explained:

> [H]ad we considered the robbery offense and the defendant being a career offender the guidelines would have been three hundred and sixty months or thirty years to life. . . . . [W]e do not consider the robbery offense and the defendant being a career offender in assessing this sentence. However, we think that a departure should be made from the minimum sentence of fifteen years. We feel that a great er sentence should be given the defendant . . . . because the defendant's criminal history category does [not] adequately reflect the seriousness of the defendant's past criminal conduct and the likelihood that the defendant will commit other crimes.[3]

Doucette asserts that the district court's ten-year upward departure from the fifteen-year minimum sentence required by § 924 (e) was "unsupported and unjustified," for the increase under

---

[3]There is a strong argument that the district court should have sentenced Doucette as an armed career criminal pursuant to § 4B1.4. This section applies to any defendant, such as Doucette, "who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924 (e)." § 4B1.4 (a). Under § 4B1.4 (b) (3) (B), Doucette's offense level would be 33. Since his criminal history category would remain VI, Doucette would be subject to a 235-293 months imprisonment. This guideline range is somewhat less than the 300 months imposed by the district court, but Doucette's sentence might be higher because § 4B1.4 does not preclude upward departures under § 4A1.3, the provision utilized by the district court.

Section 4B1.4 became effective on November 1, 1990, one year before Doucette was sentenced. The rule is therefore applicable to this case. See, e.g, United States v. Fitzhugh, 954 F.2d 253, 255 (5th Cir. 1992). The proceedings in the district court contain no references to this provision, however, and neither party has mentioned it in their briefs. For this reason, we consider Doucette to have waived whatever objections he might have had to the district court's failure to sentence him as an armed career criminal under § 4B1.4.

§ 4A1.3 "was based on the same reasoning mandating a minimum sentence of 15 years under 18 U.S.C. § 924 (e)."[4] The contention that an upward departure under § 4A1.3 from a sentence already enhanced pursuant to § 924 imposes an impermissible "double penalty" on a defendant's criminal history, however, is foreclosed by our precedents. United States v. Carpenter, 963 F.2d 736, 743 (5th Cir.), cert. denied, 113 S.Ct. 355 (1992); United States v. Fields, 923 F.2d 358, 362 (5th Cir.), cert. denied, 111 S.Ct. 2066 (1991). The Carpenter and Fields courts both held that an inadequate criminal history score may support an increase from the fifteen-year sentence supplied by § 924 (e). In affirming the district court's upward departures, both courts stressed that fifteen years is only the required minimum sentence; the maximum term under § 924 (e) is life. Carpenter, 963 F.2d at 745; Fields, 923 F.2d at 362. For this reason, "[i]f the sentencing scheme enacted by Congress in § 924 (e) (1) is to be given effect--that is, if sentences of more than fifteen years are ever to be imposed-- then the guidelines must be read to allow sentences in excess of fifteen years to be imposed in appropriate cases." Id.

The district court's determination that a criminal history category of VI did not adequately reflect the seriousness of Doucette's past conduct is well-supported by the record.[5] The presentence report indicates that Doucette received no criminal history points for three prior felony convictions (theft, bail jumping, and unauthorized use of a motor vehicle) because the sentences were

---

[4]Doucette also contends that he was given no notice that the district court might increase his sentence on the basis of criminal history in violation of United States v. Burns, 111 S.Ct. 2182 (1991). The presentence report's reference to criminal history as a potential ground for upward departure, see para. 91, however, clearly satisfies the notice requirement set out in Burns. See 111 S.Ct. at 2187.

[5]Section 4A1.3 expressly states that even a criminal history category of VI may not reflect the criminal histories of some defendants:

> The Commission contemplates that there may, on occasion, be a case of an egregious, serious criminal record in which even the guideline range for a Category VI criminal history is not adequate to reflect the seriousness of the defendant's criminal history. In such a case, a decision above the guideline range for a defendant with a Category VI criminal history may be warranted.

§ 4A1.3.

consolidated. See § 4A1.3 (a) (courts may consider "prior sentence(s) not used in computing the criminal history category"). Moreover, Doucette's twenty-four criminal history points almost double the thirteen points sufficient to place him in Category VI. See, e.g., United States v. Rivera, 879 F.2d 1247, 1255 (5th Cir.), cert. denied, 110 S.Ct. 554 (1989). As in Carpenter and Fields, we find that the district court's upward departure on the basis of Doucette's criminal history was appropriate. Carpenter, 963 F.2d at 745; Fields, 923 F.2d at 361.

"[O]nce a district court has stated appropriate reasons allowing departure, 'the precise length of the sentence [based on the departure] need not be justified.'" United States v. Rogers, 917 F.2d 165, 169 (5th Cir. 1990) (quoting United States v. Geiger, 891 F.2d 512, 514 (5th Cir.), cert. denied, 110 S.Ct. 1825 (1989), cert. denied, 111 S.Ct. 1318 (1991)). Rather, the sentence will be upheld so long as it is reasonable. 18 U.S.C. § 3742 (f) (2); Williams v. United States, 112 S.Ct. 1112, 1121 (1992); Carpenter, 963 F.2d at 744; Fields, 923 F.2d at 361. The scope of our inquiry into the reasonableness of Doucette's sentence is quite limited, shaped by the admonition that "'it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence.'" Williams, 112 S.Ct. at 1121 (quoting Solem v. Helm, 103 S.Ct. 3001, 3009 n.16 (1983)). Applying this standard, we affirm Doucette's sentence.

The district court added ten years to Doucette's fifteen year guideline sentence. This two-thirds increase exceeds the departures upheld in Carpenter, 963 F.2d at 745 (less than a one-third increase), and Fields, 923 F.2d at 361 (less than a one-seventh increase), but is significantly less than many other departures that have been affirmed by this court. See, e.g., United States v. Harvey, 897 F.2d 1300, 1305-06 (5th Cir.) (sentence more than double the guideline maximum), cert. denied, 111 S.Ct. 568 (1990); Geiger, 891 F.2d at 514 (sentence more than four times greater than guideline maximum); United States v. Roberson, 872 F.2d 597, 606 (5th Cir.) (three times), cert. denied, 110 S.Ct. 175 (1989). See also United States v. Briggman, 931 F.2d 705, 710 (11th Cir.) (upholding a fifteen year departure from the fifteen year sentence required by § 924 (e)), cert. denied, 112 S.Ct. 370 (1991). Moreover, Doucette's twenty-five year sentence falls well within § 924 (e)'s maximum

penalty of life imprisonment.  See Rogers, 917 F.2d at 169 ("Because Rogers' sentence does not exceed the maximum sentence provided by statute, he may not challenge the additional term the district court applied after its point of departure") (citing Geiger, 891 F.2d at 514).  These considerations lead us to conclude that the district court's upward departure in sentencing Doucette was not unreasonable.

III.

Doucette's conviction and sentence are AFFIRMED.